And at this time we'll hear United States v. Luchman. Good morning. Good morning, Your Honours. May it please the Court, Allegra Glasshouser representing Mr. Luchman. The government drove him to the store, the government gave him the money, the government recorded the video, the government encouraged him to continue after he considered stopping. Emmanuel Luchman was a severely mentally ill young man with no resources to plan any attack without the government. This conspiracy was not close to fruition without the government. Does it have to be close to fruition without the government? The conspiracy needs to be close to fruition, meaning it was about to happen. And there was another conspirator. Otherwise, if it was all the government, it wouldn't be a conspiracy. That's true. For five days, Mr. Luchman communicated with somebody that the government said was indeed abroad and a member of the terrorist organization. But without the help of the government informants, he wouldn't have gotten anywhere that he got here. The government needed to help him at each step of the way. And when he was arrested, he wasn't about to complete the crime. He had no weapons on him. He wasn't near the location of where the planned attack was. It wasn't the day of that planned attack. This isn't a situation where he was arrested en route to the scene of a crime. But does it have to be? I mean, he had the materials he needed. He had his target. He had his plan. It's not like you're making a lunch appointment where you have to show up at a particular time. The police can show up and stop the process from going forward. It so happened they knew all about it because they were facilitating it. Of course they can, Your Honor. But when that happens, when something is stopped, when it's a conspiracy rather than a completed crime, the person gets the benefit of a guideline reduction under the conspiracy. Exactly, and that's what Mr. Lutchman should have received here. He should have been entitled to that guideline reduction. And that's a reduction that mattered here. The difference between those two guidelines was pretty wide, and the parties clearly thought it was something that was important. The court in sentencing relied on his decision that the conspiracy was so close to completion that it would have been completed but for the government. Had he picked the date? Yes, Your Honor. And what was the gap between the arrest and the date of the planned attack? It was the next day, Your Honor. He had picked the day, I don't know, maybe three days before. This is a very short time period. He arrested the day before the date he has selected. The day that the group selected. Well, okay, but the date for the attack. That's true, Your Honor. And he'd made a tape to announce it afterwards. That's true. One of the government informants helped him record a video pledging his allegiance to ISIS. That's true. So are we talking about just that it should have been a little within the 24-hour interval between the two? We're not talking about should have. I'm not saying that the police did something wrong in arresting him at that time. We're just talking about his guideline calculation and the reality that Mr. Luchtman was not about to complete anything and wouldn't have gotten anywhere without the government. He didn't have $40 to purchase a knife. He had no resources. The owner of the location of the planned attack said he was a panhandler. This is somebody who was not able to make any steps forward without the government. Counsel, if you got this three-level deduction for incompletion, would that change the sentence? Well, Your Honor, the guidelines are, as we all know, the lodestar of where the court starts when deciding the sentence. Here, the court started with a guideline range of 360 months to life, which is an extraordinarily high guideline range, and made it exceedingly more likely that the court would find that the statutory maximum sentence was appropriate instead of something lower. I think that that guideline range obscured that this was far from the most severe instance of a conviction under this statute. This was a five-day conspiracy. The confidential informants working with the government had started speaking to Mr. Luchtman before the only co-conspirator. They did so at a time when Mr. Luchtman was recovering after an attempted suicide attempt where he had cut himself open in the stomach with a knife. He was in mental health treatment at the time trying to get better and deal with his very severe and long-term mental health issues when he's approached by government informants. At some point during the conspiracy, the five-day conspiracy, he tells one of those government informants, I'm thinking of stopping because one of the other informants, who he didn't know was an informant, had backed out. One of the government informants encouraged him to continue. Counsel, you didn't answer my question. If he got the three-level deduction, would that change his sentence given that he's at the statutory maximum? I can't know how the court would have considered his case if he had given it the three-level reduction, but I think that this court has to assume that it would change the sentencing analysis because this court and the Supreme Court has made clear that the guideline calculation is an important and essential step of the process, and if it's calculated incorrectly, a remand is appropriate for a sentencing with the correct calculation. Am I right? This is a sort of unusual case where both the guideline that they say applied and the guideline that you say applied  It's unusual, and that's correct, Your Honor, although I don't think that's unusual in these types of cases because under the material support statute and the guidelines, because of the terrorism enhancements, they're always above the statutory max, is my understanding. So the guideline range does matter when the court is considering whether this is one of the worst versions of the conduct under this statute or one of the lesser versions of conduct under this statute. So I think that the guidelines are still very important, and both parties recognize that. This was an important issue that the parties raised with the court. Did you want to take a minute and tell us about the appeal waiver? Yes, Your Honor. This is exactly the sort of case that merits this court looking past the appeal waiver. This was an unusual plea agreement because Mr. Luckman gained nothing from it. All he did was waive his right to appeal, which is an important right, and this court has written eloquently about how it's an important right. He waived his rights to the statutory maximum. No counts were dropped. The government made no agreement not to prosecute him for something else. They also made no agreement to a lower guideline range, for example. They actually disagreed on the one area that could have been a potential benefit, this three-level reduction for conspiracy, and they stated they were going to ask for the statutory maximum sentence. No rational person would just sign this agreement waiving rights while gaining nothing in return. And so this is a situation like Goodman, where this court found that a plea agreement that waived appeal up to the statutory maximum with no clear benefit in return was something that this court should look past. This court has the oversight . . . In Goodman, the government conceded that that was the only count, that the count of conviction was the only count that they could think of, and therefore, he was getting nothing. Here, the government has not made that concession, and there may very well be other charges that they did not bring. But they could still bring them, is the thing. The plea agreement didn't cover any other conduct. So when you look at a plea agreement and it explains what the government is not going to continue to prosecute for if the person signs it, if the government is waiving prosecution for additional charges, that's explained in the plea agreement. Otherwise, there's nothing preventing the government from coming back and charging something else. I'm not sure what it would be, because nobody has explained that there was some other conduct here. It was a one-count information. But the plea agreement, by its terms, does not give Mr. Luchman any benefit of being secure that there wouldn't be a prosecution for something else. Let's ask the government what Mr. Luchman got out of all of this. Thank you, Your Honor. Good morning, and may it please the Court. My name is Brett Harvey, and I represent the United States in this matter. And for the record, I was the prosecutor who handled this case before the district court. So I think I can answer the Court's questions regarding the appellate waiver. In this case, the defendant waived his right to appeal any sentence within the guidelines range, which was the statutory maximum of 240 months. That doesn't seem like much. It is not. In and of itself, it's not much, Your Honor, in the sense that it was the statute. Well, there's more to the story. We, unfortunately, before the Court, did not have reason or occasion to lay bare the details of our plea negotiations before the Court. And there's more to the negotiations than what appears in the plea agreement. All we look at is what's in the plea agreement. That's the contract. And there has to be consideration, and the consideration is recited in the contract. Well, there is consideration in this case. There's consideration in that the defendant could argue for the three-level reduction. The government agreed to the third point for acceptance of responsibility. That he got a three... you agreed... I'm sorry, agreed, let him argue for it. I apologize, Judge. You let him argue for it? Right. Why does he need your permission to argue for it? Well, typically, in a plea agreement, Judge, the parties agree to the sentencing guidelines. Here, we let him argue that the guidelines were lower. And we also permitted him to argue... As to a guideline that's above the statutory maximum? Yes. You think that's a sufficient benefit to enforce a plea waiver? Well, in addition to two other things. First of all, he could argue for a non-guideline sentence down to probation. He could argue for any sentence from zero to 20 years. Well, he could argue. Right. Again, you didn't give him that right. Well, in this sense, we did, Judge. There was additional conduct for which he could have been charged in this case. Like I said, it's not laid bare... You didn't promise not to charge him. It was the central part of our plea negotiations, Your Honor. It may have been negotiated, but it didn't get into the contract. Isn't that right? Specifically referenced, no. But the defense counsel was aware, and like I said, it was a central part of our negotiation, that there was other evidence in this case... Your Honor, it was part of the consideration in this case. That's all I can say. There were other communications that Mr. Lutschman engaged in between December 27th and December 28th of 2015 at the direction of the overseas conspirator. If you had put that into the contract and said, the government hereby agrees to X and spelled it out, then you'd at least have a better argument. The question is, do you have anything to say as to what's in the contract? Counsel, this is all extra record. This is extra record, yes, Your Honor. I acknowledge that. So we ordinarily don't pay attention to material that's extra record. Well, I think it's extra record to claim that there was no consideration given to Mr. Lutschman for this plea agreement as well. I think the argument is that the plea agreement is not supported by consideration, meaning looking at the four corners of the document. And I don't know... I don't know what there is. Your Honor, unfortunately, that last part about the additional criminal conduct did not find its way into the plea agreement. So, um... The question is, who's that unfortunate for? Well, the way the question is going, it sounds like it's unfortunate for me. But if the court does decide to reach the merits in this case, the record evidence before Judge Geraci amply shows that the sentence in this case was both procedurally and substantively reasonable. With respect to the procedure, the defendant's... Excuse me, the appellant raises the point relating to the three-level reduction under 2X1.1b2 and whether or not Judge Geraci properly determined that that three-level reduction did not apply. His findings in that regard were not erroneous and they were based on ample evidence in the record. At the time that law enforcement authorities arrested Mr. Lutschman on December 30, 2015, he had already laid out and done everything that he could to further the objective of the conspiracy except for show up and actually execute people. He had... Is it the case that he was discouraged from abandoning these plans by a government agent? Your Honor, there was a conversation with one of the informants where he had some question, and I think the response of the informant was follow your heart, basically. And now the... Mr. Lutschman had also had conversations with... Did the agent understand that follow your heart meant go forward with this terrorist activity? It wasn't an agent. It was an informant, Judge. I don't think he was... Does the government have any policy on this about discouraging people from abandoning a criminal course of conduct in order to achieve a conviction? Our policy would be... I'm not aware of any set policy, Judge, but there is a number of safeguards in place to ensure that people are not entrapped. Entrapment is different. Entrapment is different. There's no entrapment here. That's correct. I mean, it's arguably unseemly to have the government agent or informant discouraging people from abandoning a course of criminal conduct. I would dispute the characterization that he encouraged him not to abandon his criminal course of conduct, Judge. I think it was less clear than that. But in this case, nonetheless, Mr. Lutschman had reached out... As of the time of his arrest on December 30th, he had already had conversations with his co-conspirator, Abu Issa al-Amriqi, who was an ISIL external attack planner and recruiter based in Syria. And the plan was formed before any confidential informants became involved in this place, in this case. He had conversations with Mr. al-Amriqi about committing an attack on New Year's Eve to kill as many nonbelievers as possible. And that's when the plan was hatched. From that point forward, the defendant took various steps to make that plan happen. And that included enlisting the assistance of people who turned out to be confidential informants. That included selecting a location for the attack, Merchant's Bar in Rochester. That included formulating the means and methods for the attack. And that included gathering knives, machetes, zip ties, and other materials to kill people and kidnap people at that location. He purchased the supplies for the attack with the assistance of a confidential informant, and with the promise that he would reimburse the confidential informant for the cost of those supplies. And he... This was going to be a suicide attack, right? I'm sorry, Judge? This was going to be a suicide attack. No, it was not, Judge. Based on the communications... I was wondering how he was going to reimburse him. Right. Fair question. Mr. Lutschman, in his conversations with... Was he going to just leave the bomb and walk away? No bomb. This was going to be... use the knives and the machetes to kill people, take somebody away from the scene in zip ties and kidnap them and ultimately execute them. The purpose... Mr. Lutschman's stated purpose in committing this act was to get the Islamic State to vouch for him and ultimately help him make Hijra, or the journey to join the Islamic State, on the battlefield. So he fully intended to survive this attack so that he could make his way to Syria and join the Islamic State. Finally, he made what's called the bay'ah video, the oath of allegiance to the Islamic State and its leader, Abu Bakr al-Baghdadi. That occurred on December 30th, immediately prior to his arrest. Counsel is correct that it was recorded by a confidential informant, but that really is a distinction without any meaning here because Mr. Lutschman was simply carrying out the suggestion or the direction of Mr. al-Amriki, who told him early on in their text messaging to make a recording in which he states his support for the Islamic State and asks for the success of the mission so that the Islamic State could publish that recording after the attack occurred and claim responsibility for it. So he was simply completing something that al-Amriki had directed him to do, not something that the confidential informant had directed him to do. So up to that point where he's arrested by law enforcement, he had completed everything he needed to do other than to show up and start killing people. And I submit that under Medina and Downey, that is more than sufficient for the court to find that but for the apprehension of the defendant, he would have completed all the acts necessary to accomplish the objectives of the conspiracy. Nothing in those cases requires the government to wait until he showed up at the scene to actually arrest him and intervene in order to avoid the three-level reduction. I see my time is up.  Thank you, Your Honor. Your Honors, what we're talking about here is a 20-year sentence, the maximum sentence. And some of the things that the government is pointing to, I think that they're overstating. First, they say that he formed the plan before any government informants were involved. That's not supported with the record. There was an informant that was contacting him in November and December before he even started communicating with this person in Syria. And that's in our briefs. The government talks about knives and machetes. It's one knife, one machete, that Mr. Luchtman could not get without the government informant. He had to be driven to the store, and then he got there and didn't even have $40. This isn't a situation where he is a mastermind of anything. And the goals of this didn't quite make sense either. He wanted to go abroad. He's somebody who didn't even have a passport. He'd never traveled abroad. Mr. Luchtman is somebody with a long history of self-harm, not a history of violence. And he was targeted by government informants at a moment of even more... You're arguing now that he has mental problems, which he no doubt does. But I don't think you can argue that the court didn't consider it, because the court did consider it. Right, and the court actually seemed to think of it as aggravating, which... Well, making it more dangerous. But what Mr. Luchtman clearly needs, and I think even the government had agreed at sentencing, is significant treatment. And when your honors are looking at this sentence, both the procedural reasonableness and the substantive reasonableness, he's someone who should have gotten that 3-point reduction for the conspiracy. This is not like Medina. In Medina, the people are actually literally on their way to the robbery site. And he's somebody that should have had his mitigating mental health issues considered as a mitigating factor by the court. 20 years is a very long sentence, and the maximum sentence for conduct that is not the most severe under the statute. Thank you. Thank you. Thank you both. We will reserve decision. The last case on calendar is Mazzeo v. Mnuchin. We will take that on submission. Please adjourn court.